

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Tamera L. Fine
Assistant United States Attorney
tamera.fine@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4806
MAIN: 410-209-4800
FAX: 410-962-0716

July 26, 2016

John R Francomano, III, P.A., Esquire
101 E Chesapeake Ave
Suite 200
Towson, MD 21286

Re:  Plea Agreement in *U.S. v. Ronald Rhoda*, Criminal No. MJG-15-565

Dear Mr. Francomano:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If this offer has not been accepted by the Defendant by August 9, 2016, it will be deemed withdrawn. If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to plead guilty to Counts One and Seventeen of the Indictment now pending against him, which charges him in Count One with Bank Fraud Conspiracy, in violation of 18 U.S.C. §1349, and in Count Seventeen with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

#### Bank Fraud Conspiracy

a.  There was a conspiracy to commit bank fraud, that is, a scheme i) to defraud a financial institution or ii) to obtain money or property owned by or under the custody and control of a financial institution by means of false or fraudulent pretenses, representations or promises.

b.  The Defendant knowingly joined the conspiracy.

c.  One or more of the banks involved were insured by the Federal Deposit Insurance Corporation at the time of the conspiracy.

### Aggravated Identity Theft

a. The Defendant knowingly transferred, possessed, or used the means of identification of another person, including knowing the means of identification belonged to a real person;

b. The Defendant did not have lawful authority to transfer, possess or use the means of identification of another person; and

c. The Defendant used the means of identification during and in relation to a felony violation set forth in 18 U.S.C. §1028A(c), specifically the bank fraud conspiracy as charged in Count One.

### Penalties

3. The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows: (a) Count One - Bank Fraud Conspiracy: 30 years period of incarceration, five years of supervised release and a $1,000,000.00 fine; and (b) Count Seventeen - Aggravated Identity Theft: A term of imprisonment of two (2) years, to run consecutively with any other term of imprisonment imposed for Count One, followed by a term of supervised release of not more than one (1) year, and a fine of up to $250,000. In addition, the Defendant must pay $200.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty

of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

  c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

  d. The Defendant would have the right to testify in his own defense if he so chose and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

  e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will

3

impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

#### Count One (Bank Fraud Conspiracy)

a. The base offense level for Count One is seven (7). U.S.S.G. §2B1.1(a)(1).

b. Because the intended loss foreseeable to the Defendant during the period of time the Defendant was involved in the conspiracy was more than $550,000, an additional fourteen (14) levels must be added under U.S.S.G. § 2B1.1(b)(1)(H).

c. Because the offense involved more than 10 victims, during the period of time that the Defendant was involved, an additional two (2) levels must be added under U.S.S.G. § 2B1.1(b)(2)(A).

d. Because the Defendant relocated or participated in relocating, the scheme across state lines to evade law enforcement, an additional two (2) levels must be added under U.S.S.G. §2B1.1(b)(10).

#### Count Seventeen (Aggravated Identity Theft)

e. This Office and the Defendant understand, agree and stipulate that 18 U.S.C. § 1028A and U.S.S.G. § 2B1.6 require imposition of a sentence of 24 months imprisonment to be imposed consecutively to the sentence imposed for the offense charged in Count One.

f. This Office does not oppose a two level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

g. Defendant's adjusted guidelines level for Count One is 22.

4

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Restitution

11. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' actual losses during the time the Defendant was participating in the scheme, currently computed to be approximately **$691,594** and that restitution shall be due and payable immediately upon sentencing. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663, 3663A, 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Collection of Financial Obligations

12. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

13. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the

5

Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

14. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

15. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence in imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, and term or condition of supervised release).

   c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

   e. The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement.

## Obstruction or Other Violations of Law

16. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any

offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

17. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

18. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Tamera L. Fine
Ayn B. Ducao
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/26/16
Date

_____
Ronald Rhoda

I am Ronald Rhoda's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10/31/16
Date

_____
John R Francomano, III, Esquire

8

Attachment A
Factual Stipulation

*If this matter had proceeded to trial, the government would have proven the following beyond a reasonable doubt. The Defendant agrees that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

1. Ronald Rhoda (the "Defendant"), age 43, is a Florida resident. From in or about September 2012, through in or about April 2015, in the State of Maryland and elsewhere, the Defendant conspired and agreed together with his co-defendants to execute a scheme and artifice to defraud various financial institutions by cashing stolen checks using the identity of other victims.

2. As set forth in the indictment, the Defendant was part of an organized group of individuals from Florida who travel around the United States committing check fraud. Traveling groups generally consist of two to four managers and one to six "strikers" (sometimes called "sliders" or "workers") or persons who pass the fraudulent and stolen checks. They travel in rental cars and stay in hotels, sometimes rented using victims' identities and credit cards.

3. The managers go to locations where individuals often leave their belongings in their car: gyms, parks, athletic fields, etc., and they do smash and grab auto robberies, breaking into vehicles and stealing wallets and purses for the identifications, credit cards and check books -- collectively called "paper." Other items are usually discarded. The "paper" is provided to the strikers, along with glasses and wigs to allow them to resemble the individuals pictured in the stolen ids. The strikers, generally in teams of a driver and a passenger posing as the victim, travel to banks to cash the checks stolen from victims. Generally the transactions are conducted from automobiles using the "drive-thru" banking lanes. The managers are either in another car parked nearby so they can watch both the transaction and look out for police, or they are crouched down behind the front seat. The Defendant was one such striker who went to banks and cashed checks stolen from the victims.

4. For example, on April 30, 2013, the Defendant and co-defendant Tara Kathleen Whyte attempted to cash a check in the amount of $2,000.00, made payable to an individual, "AB," and using the Maryland driver's license ending 6787 and Tower Federal Credit Union ("Tower") member number ending 2720 of "AB," at the Snowden Branch of Tower in Columbia, Maryland. In attempting to cash the check described in this paragraph, the Defendant and Tara Whyte used the name and Tower member number ending 2720 of "AB," all during and in relation to bank fraud conspiracy under 18 U.S.C. §1349, as set forth in Count One of the Indictment and bank fraud under 18 U.S.C. §1344, as set forth in Count Sixteen of the Indictment. The Defendant further knew that "AB" was a real person.

5. As another example, on September 23, 2013, the Defendant and a currently uncharged co-conspirator cashed a check in the amount of $990.00 made payable to an individual, "DT," and using the identification and Key Branch bank account number ending 1726 of "DT," at a Key Bank branch location in Tacoma, Washington. In cashing the check described in this paragraph, the Defendant used the name, identification, and Key Branch bank account number ending 1726 belonging to "DT," and the name and the Washington State Employees Credit Union financial account number belonging to another individual, "LG," all

during and in relation to bank fraud conspiracy under 18 U.S.C. §1349, as set forth in Count One of the Indictment. The Defendant further knew that "DT" and "LG" were real persons.

6. Tower Federal Credit Union, Key Bank, Washington State Employees Credit Union are all insured by either the FDIC or National Credit Union Share Insurance Fund.

7. During the Defendant's participation in the conspiracy, the Defendant and his co-conspirators actually obtained approximately $691,594 from federally-insured institutions. More than 10 financial institutions and individuals were victimized by this scheme.

I have read this Factual Stipulation and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. It accurately reflects what I did and what the government could prove I did. I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/26/16
Date

Ronald Rhoda

I am Ronald Rhoda's attorney. I have carefully reviewed every part of this Factual Stipulation, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10/31/16
Date

John R Francomano, III, Esquire

2